# UNITED STATES DISTRICT COURT

### for the
### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Alonzo Matthew White<br>2064 Lauren Woods Drive,<br>Winston-Salem, NC 27127 | )<br>)<br>)<br>)<br>)<br>)<br>) |

    Case No. 1:22MJ184-1

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment (A)

located in the _____**Middle**_____ District of _____**North Carolina**_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment (B)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution/Manufacturing/Possession with intent to Distribute Controlled Substance |

The application is based on these facts:

See attached affidavit.

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Matthew La Valley
*Applicant's signature*

Matthew La Valley, ATF TFO
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: _____04/19/2022\_\_\_\_3:18 pm\_\_\_\_

_____
*Judge's signature*

City and state: Durham, North Carolina

United States Magistrate Judge Joe L. Webster
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Matthew La Valley, Task Force Officer, Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF), Greensboro, North Carolina, being duly sworn, depose and state as follows:

1.     I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been for approximately three years, as well as a Police Officer with the Winston-Salem Police Department, and have been for approximately nine years. Your affiant has received local, state and federal training in the identification and investigation of narcotics. Furthermore, your affiant has made and assisted with more than 200 arrests for narcotic related violations at both the state and federal levels.

2.     This affidavit is submitted in support of an application for a search warrant for the residence and vehicles located at 2064 Lauren Woods Drive, Winston-Salem, North Carolina; and located within the Middle District of North Carolina.

3.     This has been an ongoing investigation since January 2022. The information contained in this affidavit is based upon information provided by other ATF special agents, ATF task force officer, and other federal, state and local law enforcement officers, public source documents such as police reports, telephone toll analysis, physical surveillance and my own personal investigation. The information contained in this affidavit is submitted for the sole purpose of establishing probable cause for a search warrant mentioned

herein. As a result, it does not contain every fact known to me concerning this investigation. Based upon all of the facts set out in the paragraphs below, I allege the following:

a. that the target of this investigation is engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C);

b. that the evidence sought through the use of a search warrant listed herein will provide investigators with evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of additional co-conspirators, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs; and,

c. that there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application, which is located within the Middle District of North Carolina.

4. Based upon my training and experience, as well as the other sources of information mentioned herein, I know the following:

2

a.    that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, pagers, scanners, cellular telephones and other instruments and papers relating to transportation, ordering, distribution, and sale of controlled substances.  Further, that drug traffickers commonly "front" (provide on consignment) methamphetamine and other controlled substances to their clients; and that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, including on their persons.  Cellular telephones and the telephones are of evidentiary value with respect to the identification of subjects who have not yet been positively identified.

b.    that it is common for large scale drug traffickers to secrete contraband proceeds of drug sales, and records of drug transactions, in secure locations within their residences, their automobiles, their businesses and/or on their persons for ready access and to conceal these records from law enforcements.

c.    that persons involved in large scale drug trafficking conceal within their residences and businesses large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to the obtaining, transferring, secreting, or

3

spending of large sums of money obtained as a result of their participation in drug trafficking activities.

  d. that when drug traffickers amass large cash proceeds from the sale of drugs, the drug traffickers attempt to "legitimize" these profits. To accomplish this goal, drug traffickers utilize domestic banks and their attendant services, i.e., securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate and also shell transactions, and various business fronts to legitimize their profits made form narcotics trafficking.

  e. that drug traffickers maintain names, addresses or telephone numbers in books, ledgers, electronics storage devices or on papers which reflect the names, nicknames, code names, addresses, and/or the telephone numbers of their criminal associates, and may be used to identify coconspirators who have not been identified or located.

  f. that drug traffickers frequently take or cause to be taken photographs or other video images of themselves, their associates, their property, and other items of evidentiary value and that these traffickers usually maintain these photographs and video images in their possessions.

g.      that the courts have recognized that unexplained wealth is probative of crimes motivated by greed, in particular, drug trafficking and money laundering.

h.      that drug traffickers frequently maintain fictitious identification and other documents which are intended to conceal their identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance.

i.      that drug traffickers frequently store and maintain paraphernalia used for the packaging, diluting, weighing and/or distribution of drugs inside their residence; including, but not limited to: scales, plastic bags, diluting agents, tape, plastic wrap, and other items used to conceal drugs during transportation such as chemical and other odor-masking agents.

j.      that individuals involved in the collection, accounting, packaging, transportation and laundering of drug proceeds often maintain paraphernalia used to perform these tasks, including, but not limited to money counting machines, plastic wrap, bulk quantities of rubber bands, and other items used to conceal drug proceeds such as chemical and other odor-masking agents.

5

k.      that drug traffickers most generally have in their possessions, that is, on their persons, in their vehicles, in their residence and/or in their business, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure the drug traffickers' property and persons.  Such property may include, but not be limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and United States currency

l.      that drug traffickers often place assets in names other than their own to avoid the detection of these assets by government agencies.

m.      that drug traffickers often place assets in corporate entities in order to avoid the detection of these assets by governmental agencies.

n.      that even though these assets are in other persons' names, that drug traffickers continue to use these assets and exercise dominion and control over them.

o.      that these assets are hidden in order to evade the payment of taxes on income and/or prevent forfeiture in event of prosecution.

p.      that large scale drug traffickers must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing narcotics business.

6

## CRIMINAL ACTIVITIES OF ORGANIZATION

5.   The subject of this investigation is engaged in the offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C). This investigation was initiated in January 2022 and has been ongoing to present. The investigation has thus far included the use of confidential sources, physical surveillance, controlled purchases, and telephone toll analysis. Among the goals of this investigation is to identify all members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs.

## FACTS ESTABLISHING PROBABLE CAUSE

6.   During the month of January 2022, TFO La Valley utilized an ATF Confidential Informant (CI) to make contact with subjects in Winston-Salem, North Carolina.   During the CI's interaction with a subject, the CI was informed of an individual who sells "crack" cocaine who is known by the alias "Zo." The CI was provided the phone number "202-937-9372" for "Zo."

7.   On January 7, 2022, the CI was contacted by a male who identified himself as "Zo" utilizing phone number 202-937-9372.  "Zo" stated he could get the "hard" (cocaine) but the "soft" (powder cocaine) is going "to be straight drop." He stated he gets it from outside of Winston-Salem.

8.     TFO La Valley queried the 202-937-9372 phone number for "Zo" through local databases, however found no results. TFO La Valley then entered the phone number into Cash App, which resulted in the phone number showing the name "Alonzo White" with a Cash App $Cashtag of $OTowners.

9.     TFO La Valley then queried the Winston-Salem Police Department database for Alonzo White and located Alonzo Matthew White (B/M 1/28/1993). A criminal history check of Alonzo White was conducted which revealed him to be a convicted felon having been convicted of several drug related felony offenses, including Trafficking Schedule II, Manufacture Schedule II, PWISD Schedule I, and PWISD Schedule II. The date of conviction for these offenses are all August 7, 2014, and WHITE was sentenced to three (3) years and six (6) months in prison.

10.     On January 11, 2022, the CI contacted WHITE and agreed upon meeting on Thursday, January 13, 2022.  WHITE agreed to selling the CI two ounces of "crack" cocaine.

11.     On January 12, 2022, the CI again contacted WHITE. WHITE advised he could sell the two ounces of "crack" cocaine to the CI for $1,100 per ounce.

12.     On January 13, 2022, TFO La Valley instructed the CI to contact WHITE to confirm the previously agreed narcotic transaction was still scheduled to take place. As instructed, the CI contacted WHITE.

8

13.     During their conversation, WHITE informed the CI the price per ounce of "hard" ("crack" cocaine) will be one thousand three hundred dollars ($1,300.00) as opposed to the previously agreed upon one thousand one hundred dollars ($1,100.00). The CI agreed to this price change. The CI and WHITE also agreed to meet at the "Jetway," which is located at 2825 New Walkertown Road, Winston-Salem, North Carolina.

14.     On January 13, 2022, TFO La Valley and SA Crocker then met with the ATF CI in a pre-determined location and directed the CI to respond to 2825 New Walkertown Road, Winston-Salem North Carolina to meet with WHITE and purchase two (2) ounces of "crack" cocaine. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the "crack" cocaine.

15.     Prior to the operation, the CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The CI also received a video/audio recording device to capture any interaction the CI has with WHITE.

16.     Once assisting officers were in the area of 2825 New Walkertown Road, Winston-Salem, North Carolina to conduct surveillance, TFO La Valley and SA Crocker instructed the ATF CI to respond to 2825 New Walkertown Road, Winston-Salem, North Carolina.

9

17.     The CI arrived at the Jetway and contacted WHITE at his provided phone number of 202-937-9372. WHITE confirmed he was in a Charger. While TFO La Valley was conducting surveillance, he observed a blue in color Dodge Charger parked in the parking lot at 2825 New Walkertown Road. WHITE exited the Dodge Charger and walked to the CI vehicle and entered the front passenger seat.

18.     Once in the vehicle with the CI, WHITE advised since this was the first time meeting the CI, WHITE and his "mans" agreed to only bringing one ounce. WHITE then sold one ounce of "crack" cocaine to the CI for one thousand three hundred dollars ($1,300.00) of Agent Cashier Funds. WHITE advised that if the CI wanted the second ounce, WHITE would go get it. WHITE advised that "hard ain't the lane, the soft and the fent is the lane" referring to powder cocaine and fentanyl.

19.     WHITE informed the CI he is from Detroit and had "caught a trafficking charge down here." WHITE asked the CI if the CI was willing to wait a few minutes and he would go pick up the second ounce, which the CI agreed.

20.     WHITE then exited the CI vehicle and entered the Dodge Charger. TFO La Valley observed the Dodge Charger exit the parking lot and turn south onto New Walkertown Road. TFO La Valley and SA Crocker followed the Dodge Charger, observing its vehicle registration to be North Carolina

10

HAB6890. An inquiry of that registration revealed the vehicle to be registered to David Alan White Jr (B/M 01/21/1987). TFO La Valley and SA Crocker followed the vehicle to the Food Lion parking lot located at 1499 New Walkertown Road. TFO La Valley and SA Crocker then returned to the area of the CI and the other assisting officers.

21.    A short time later WHITE called the CI and informed the CI that he did not want to keep the CI waiting on him. The CI agreed to get back up with WHITE on another date.

22.    The CI left the area and drove to a pre-determined location with TFO La Valley and SA Crocker following the CI. The CI arrived at the pre-determined location and the purchased "crack" cocaine was seized. The CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The video/audio recording device was also recovered from the CI.

23.    The suspected "crack" cocaine was weighed and was determined to be approximately 29.1 grams. A field-test of the substance was conducted and showed a positive indication for the presence of cocaine.

24.    Upon review of the surveillance footage, TFO La Valley was able to confirm the identity of "Zo" as being ALONZO MATTHEW WHITE (B/M 1/28/1993).

25.    TFO La Valley conducted a search through the North Carolina Secretary of State and found WHITE to have a registered business called

"Outter Towners LLC," which is consistent with the Cash App name associated with WHITE's provided phone number. TFO La Valley also observed the registered business to have an address of 2064 Lauren Woods Drive, Winston-Salem, North Carolina. TFO La Valley conducted a query of that address and discovered it to be a single-family dwelling which is owned by WHITE.

26. On January 19, 2022, TFO La Valley instructed the CI to contact WHITE and arrange to purchase narcotics from WHITE the following week.

27. On January 19, 2022, the CI contacted WHITE at phone number 202-937-9372. During the conversation, WHITE agreed to sell the CI methamphetamine, specifically crystal methamphetamine, for three hundred fifty dollars ($350.00) an ounce.

28. On January 23, 2022, TFO La Valley instructed the CI to again contact WHITE and attempt to arrange the transaction for Tuesday, January 25, 2022.

29. On January 23, 2022, the CI contacted WHITE by text message requesting WHITE to call the CI regarding their conversation they previously had on January 19, 2022. On January 23, 2022, WHITE called the CI. During WHITE's conversation with the CI, WHITE agreed to meeting on Tuesday, January 25, 2022. WHITE also asked if the CI still wanted two ounces of methamphetamine which the CI confirmed same.

12

30.     On January 25, 2022, WHITE contacted the CI and informed the CI he only had one ounce of methamphetamine for sale. WHITE also advised the CI to meet him at 300 Griffith Commons Drive, Winston-Salem, North Carolina.

31.     On January 25, 2022, TFO La Valley and SA Crocker met with the CI in a pre-determined location and directed the CI to respond to 300 Griffith Commons Drive, Winston-Salem North Carolina to meet with WHITE and purchase one (1) ounce of methamphetamine. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the methamphetamine.

32.     Prior to the operation, the CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The CI also received a video/audio recording device to capture any interaction the CI has with WHITE.

33.     Once assisting officers were in the area of 300 Griffith Commons Drive, Winston-Salem, North Carolina to conduct surveillance, TFO La Valley and SA Crocker instructed the CI to respond to 300 Griffith Commons Drive, Winston-Salem, North Carolina.

34.     The CI then responded to 300 Griffith Commons Drive, Winston-Salem, North Carolina to meet WHITE. The CI arrived at 300 Griffith Commons Drive and WHITE exited a blue Dodge Charger and sat in the CI's

13

front passenger seat. WHITE then sold the CI one ounce of methamphetamine for three hundred sixty dollars ($360.00) of Agent Cashier Funds.

35. At the conclusion of the narcotic transaction, WHITE exited the CI vehicle and entered the Dodge Charger. WHITE drove the Dodge Charger out of the apartment complex, at which time it was confirmed he was driving the same Dodge Charger (North Carolina Registration HAB6890) he had driven on the previous narcotic transaction.

36. The CI left the area and drove to a pre-determined location with TFO La Valley and SA Crocker following the CI. The CI arrived at the pre-determined location and the purchased methamphetamine was seized. The CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The video/audio recording device was also recovered from the CI.

37. The suspected methamphetamine was weighed and was determined to be approximately 28.3 grams. A field-test of the substance was conducted and showed a positive indication for the presence of methamphetamine.

38. On March 14, 2022, TFO La Valley instructed the CI to contact WHITE and arrange to purchase narcotics from WHITE. The CI then contacted WHITE and requested purchasing two (2) ounces of "crack" cocaine,

Case 1:22-mj-00184-JLW   Document 1   Filed 05/06/22   Page 15 of 31

47. WHITE and the CI then proceeded to execute the narcotic transaction for "crack" cocaine. WHITE sold the CI two (2) ounces of "crack" cocaine for two thousand six hundred dollars ($2,600.00) of Agent Cashier Funds.

48. At the conclusion of the narcotic transaction, WHITE exited the CI vehicle and entered the silver in color vehicle. WHITE drove the silver in color vehicle south on Edgewood View Lane and then west onto Lemly Street. Assisting officers conducting surveillance attempted to conduct a follow of WHITE to the address for the methamphetamine source; however, officers lost sight of WHITE.

49. A short time later, WHITE returned in the same silver in color vehicle. WHITE sold the CI one (1) ounce of methamphetamine for three hundred dollars ($300.00) of Agent Cashier Funds. Once the transaction concluded, WHITE returned to the silver in color vehicle. The CI advised the registration for WHITE's vehicle was TJS3327. The vehicle, which was confirmed to be the same Chevrolet Cruz seen at 2064 Lauren Woods Drive earlier in the day, drove toward Lemly Street. Assisting officers then conducted a follow of WHITE.

50. The CI left the area and began driving to a pre-determined location with TFO La Valley and SA Crocker following the CI. The CI arrived at the pre-determined location and the purchased "crack" cocaine and

17

42. Prior to the operation, the CI and the CI's vehicle was searched by TFO La Valley for contraband with negative results. The CI also received a video/audio recording device to capture any interaction the CI has with WHITE.

43. Once assisting officers were in the area of 95 Edgewood View Lane, Winston-Salem, North Carolina to conduct surveillance, TFO La Valley and SA Crocker instructed ATF to respond to 95 Edgewood View Lane, Winston-Salem, North Carolina.

44. The CI then responded to 95 Edgewood View Lane, Winston-Salem, North Carolina to meet WHITE. The CI arrived at 95 Edgewood View Lane and parked the CI vehicle. WHITE arrived a short time later in a silver in color vehicle and sat in the CI's front passenger seat.

45. Once WHITE was in the CI vehicle, the CI asked WHITE if he had an ounce of methamphetamine, which WHITE advised he could try to "make a move."

46. WHITE then made a phone call to an unknown subject to attempt to obtain the ounce of methamphetamine. WHITE advised the residence is close to their current location. After being unable to reach the unknown subject by phone, WHITE advised he would just go to the subject's residence and attempt to obtain the methamphetamine.

which WHITE agreed to selling same. WHITE and the CI agreed on meeting for the drug transaction on March 16, 2022.

39.     On March 16, 2022, TFO La Valley, TFO Van Kuren and SA Crocker conducted surveillance on the residence of 2064 Lauren Woods Drive, Winston-Salem, North Carolina, which is owned by WHITE. During the surveillance a silver in color Chevrolet Cruz bearing North Carolina Registration TJS3327 was observed in the driveway. A query of this vehicle registration through North Carolina DMV revealed the registered owner to be Sharmayra Ervette Renea Smith.

40.     On March 16, 2022, TFO La Valley and SA Crocker met the CI in a pre-determined location and directed the CI to meet with WHITE and purchase two (2) ounces of "crack" cocaine. Furthermore, TFO La Valley and SA Crocker instructed the CI to request to purchase an additional ounce of methamphetamine from WHITE, once WHITE was meeting with the CI. The CI was provided Agent Cashier Funds to conduct the controlled buy for the "crack" cocaine and methamphetamine.

41.     The CI was then provided a meet location by WHITE, 95 Edgewood View Lane, Winston-Salem North Carolina. A query of that location revealed it to be the northern end of Edgewood View Lane south off I-40 and not an actual residence.

15

methamphetamine were seized. The CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The video/audio recording device was also recovered from the CI.

51.     Officers continued following WHITE while he operated the silver in color Chevrolet Cruz. WHITE was the only occupant of the vehicle. After the narcotic transaction, WHITE drove to 2265 Old Salisbury Road (Shell Gas Station). While at the gas station, WHITE was pulled at a gas pump. A silver in color Mitsubishi Mirage pulled into the gas station parking lot and WHITE walked over to the Mitsubishi. WHITE briefly spoke with the unidentified occupant and returned to the Chevrolet Cruz. No exchange of any items was observed by officers. WHITE then drove from the parking lot and drove to 2064 Lauren Woods Drive, Winston-Salem, North Carolina and went into the residence.

52.     The suspected "crack" cocaine was weighed and was determined to be approximately 56.96 grams. A field-test of the substance was conducted and showed a positive indication for the presence of cocaine. The suspected methamphetamine was weighed and was determined to be approximately 29.06 grams. A field-test of the substance was conducted and showed a positive indication for the presence of methamphetamine.

18

53. On March 25, 2022, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) TFO La Valley instructed the ATF CI to contact WHITE and arrange to purchase methamphetamine from WHITE.

54. On March 25, 2022, the CI contacted WHITE at phone number 202-937-9372. During the conversation, the CI requested purchasing two ounces of methamphetamine from WHITE. WHITE advised he would attempt to obtain same.

55. A short time later, the CI received a phone call from WHITE. WHITE advised he was in contact with an unidentified male and that the unidentified male did not have the requested two (2) ounces of methamphetamine. WHITE advised the unidentified male said he would have additional narcotics in by Monday (3/28/2022).

56. The CI contacted WHITE a short time later and asked WHITE to call the CI once WHITE can obtain the two (2) ounces of methamphetamine from his unidentified source. WHITE advised he would "grab a few" ounces of methamphetamine from the unidentified source and hold onto them until the CI could come retrieve same.

57. On March 27, 2022, WHITE contacted the CI and informed the CI he was in possession of the previously requested methamphetamine.

58. On March 29, 2022, TFO La Valley, TFO Van Kuren and SA Crocker conducted surveillance on the residence of 2064 Lauren Woods Drive,

19

Winston-Salem, North Carolina. During the surveillance, a silver in color Chevrolet Cruz bearing North Carolina Registration TJS3327 was parked in the driveway. A query of this vehicle registration through North Carolina DMV revealed the registered owner to be Sharmayra Ervette Renea Smith.

59. TFO Van Kuren remained conducting surveillance of 2064 Lauren Woods Drive, while TFO La Valley and SA Crocker conducted a briefing at a pre-determined briefing location in Winston Salem, North Carolina concerning the CI being directed to purchase three (3) ounces of methamphetamine from WHITE.

60. TFO La Valley and SA Crocker then met with the CI in a pre-determined location and directed the CI to contact WHITE and request to purchase three (3) ounces of methamphetamine. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the methamphetamine.

61. The CI contacted WHITE, who agreed to sell the CI three (3) ounces of methamphetamine. WHITE provided the CI with a location, 300 Griffith Commons Drive, Winston-Salem North Carolina.

62. Prior to the operation, the CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The CI also received a video/audio recording device to capture any interaction the CI has with WHITE.

63.     Assisting officers responded to the area of 300 Griffith Commons Drive, Winston-Salem, North Carolina to conduct surveillance. Additional assisting officers responded to the area of 2064 Lauren Woods Drive, Winston-Salem, North Carolina with TFO Van Kuren. Once all assisting officers were in place, TFO La Valley and SA Crocker instructed the ATF CI to respond to 300 Griffith Commons Drive, Winston-Salem, North Carolina.

64.     The CI then responded to 300 Griffith Commons Drive, Winston-Salem, North Carolina to meet WHITE. During the surveillance, TFO Van Kuren advised the garage door to 2064 Lauren Woods Drive was opening and a black in color Lexus passenger car bearing North Carolina registration RDH1435 was backing out. This vehicle was followed out of the neighborhood as it drove west on Darwick Road toward Ebert Road. The Lexus was followed to the area of Griffith Commons Drive, where the Lexus turned into the apartment complex.

65.     Once in the apartment complex, assisting officers observed the Lexus park next to the CI vehicle. WHITE exited the driver's seat of the Lexus and sat in the front passenger seat of the CI vehicle. WHITE then sold the CI three (3) ounces of methamphetamine for one thousand fifty dollars ($1,050.00) of Agent Cashier Funds.

66.     At the conclusion of the narcotic transaction WHITE exited the CI vehicle and returned to the Lexus. WHITE drove the Lexus to Griffith Road

21

and turned south toward Clemmonsville Road. Assisting officers followed WHITE out of the area.

67. The CI then left the area and began driving to a pre-determined location with TFO La Valley and SA Crocker following the CI. The CI arrived at the pre-determined location and the purchased methamphetamine were seized. The CI and the CI's vehicle were searched by TFO La Valley for contraband with negative results. The video/audio recording device was also recovered from the CI.

68. Officers continued following WHITE while he operated the Lexus after the narcotic transaction. WHITE drove from the narcotic transaction to 3193 Peters Creek Parkway and parked in the parking lot. WHITE then walked from the Lexus and entered a business name "Swag Street Style." WHITE briefly went into the business and then returned to the Lexus. WHITE drove from the parking lot and drove to 2064 Lauren Woods Drive, Winston-Salem, North Carolina and parked the Lexus in the garage.

69. The suspected methamphetamine was weighed and was determined to be approximately 88.5 grams. A field-test of the substance was conducted and showed a positive indication for the presence of methamphetamine.

70. On April 18, 2022, TFO La Valley, TFO Van Kuren and SA Crocker conducted surveillance on the residence of 2064 Lauren Woods Drive, Winston-

22

Salem, North Carolina. During the surveillance, a silver in color Chevrolet Cruz bearing North Carolina Registration TJS3327 was parked in the driveway. A query of this vehicle registration through North Carolina DMV revealed the registered owner to be Sharmayra Ervette Renea Smith. Parked directly on the curb line in front of 2064 Lauren Woods Drive was a dark blue in color Dodge Charger bearing North Carolina registration HAB6890.

71.     TFO Van Kuren remained conducting surveillance of 2064 Lauren Woods Drive, while TFO La Valley and SA Crocker conducted a briefing at a pre-determined briefing location in Winston Salem, North Carolina concerning the ATF CI being directed to purchase three (3) ounces of methamphetamine from WHITE.

72.     TFO La Valley and SA Crocker then met with the ATF CI in a pre-determined location and directed the CI to contact WHITE and request to purchase three (3) ounces of methamphetamine. The CI was then provided Agent Cashier Funds to conduct the controlled buy for the methamphetamine.

73.     The CI then contacted WHITE, who agreed to sell the CI the requested three (3) ounces of methamphetamine. WHITE provided the CI with a location, 300 Griffith Commons Drive, Winston-Salem North Carolina.

74.     Prior to the operation, the CI and the CI's vehicle was searched by SA Crocker for contraband with negative results. The CI also received a

video/audio recording device to capture any interaction the CI has with WHITE.

75.     Assisting officers responded to the area of 300 Griffith Commons Drive, Winston-Salem, North Carolina to conduct surveillance. Additional assisting officers responded to the area of 2064 Lauren Woods Drive, Winston-Salem, North Carolina with TFO Van Kuren. Once all assisting officers were in place, TFO La Valley and SA Crocker instructed the ATF CI to respond to 300 Griffith Commons Drive, Winston-Salem, North Carolina.

76.     The CI then responded to 300 Griffith Commons Drive, Winston-Salem, North Carolina to meet WHITE. Shortly after the CI arrived at 300 Griffith Commons Drive, WHITE exited 2064 Lauren Woods Drive and walked to and entered the driver's seat of the Dodge Charger parked on the curb line. This vehicle was followed out of the neighborhood as it drove west on Darwick Road toward Ebert Road. The Dodge Charger was followed to the area of Griffith Commons Drive, where the Dodge Charger turned into the apartment complex.

77.     Once in the apartment complex, assisting officers observed the Dodge Charger park next to the CI vehicle. WHITE exited the driver's seat of the Dodge Charger and sat in the front passenger seat of the CI vehicle. WHITE then sold the CI three (3) ounces of methamphetamine for one thousand fifty dollars ($1,050.00) of Agent Cashier Funds.

24

78.     At the conclusion of the narcotic transaction, WHITE exited the CI vehicle and entered the Dodge Charger. WHITE drove the Dodge Charger to Griffith Road and turned north toward Hanes Mall Blvd. Assisting officers followed WHITE out of the area.

79.     The CI then left the area and began driving to a pre-determined location with TFO La Valley and SA Crocker following the CI. The CI arrived at the pre-determined location and the purchased methamphetamine were seized. The CI and the CI's vehicle were searched by SA Crocker for contraband with negative results. The video/audio recording device was also recovered from the CI.

80.     Officers continued following WHITE while he operated the Dodge Charger after the narcotic transaction. WHITE drove from the narcotic transaction to 1305 N Liberty Street (Exxon) and parked alongside a gas pump. WHITE then walked to a white in color pickup truck and engaged in an apparent hand to hand transaction with a black male wearing a blue hoody. WHITE then returned to the Dodge Charger and drove back to 2064 Lauren Woods Drive, Winston-Salem, North Carolina.

81.     The suspected methamphetamine was weighed and was determined to be approximately 85.95 grams. A field-test of the substance was conducted and showed a positive indication for the presence of methamphetamine.

# CONCLUSION

82.   It is believed that the facts alleged herein establish the following:

a.   that the target of this investigation is engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute Methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code 841(b)(1)(c) and the distribution and possession with intent to distribute "crack" cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code 841(b)(1)(c);

b.   that the evidence sought through the use of this search warrant listed establishes Probable Cause to enter house and search the residence and vehicles located withing the curtilage of the residence,

c.   investigators believe additional admissible evidence of these crimes establishing the full scope and nature of the offenses being investigated; including determining the identity of members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs, firearms; and,

d.   that there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said

26

offenses, will be located within the locations specified in this application which is located within the Middle District of North Carolina.

Respectfully submitted,
/S/ Matthew La Valley
Matthew La Valley
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 19th day of April, 2022, at 3:18 p.m.

JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE

27

## Attachment A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED

The entire premises, including any outbuildings, located at 2064 Lauren Woods Drive, Winston-Salem, North Carolina 27127. The residence is described as a two-story single-family residence with basement, with a garage, with white siding, and dark colored shutters. The residence is on the east side of Lauren Woods Drive with the front of the residence facing west. The numbers "2064" are located on the residence to the immediate left of the front door when facing the front of the residence.



Any automobiles located within in the curtelidge of 2064 Lauren Woods Drive, Winston-Salem, North Carolina 27127, including, a 2007 Dodge Charger (North Carolina Registration HAB6890); 2015 Chevrolet Cruz (North Carolina Registration TJS3327); and 2001 Lexus IS300 (North Carolina Registration RDH1435).

# APPLICATION FOR SEARCH WARRANT

## ATTACHMENT B

### Property to be Seized and Subsequently Searched

All records, materials, items, and property which constitute evidence, contraband, fruits, instrumentalities, or property designed or intended for use, or that has been used, as the means of committing a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Possession with Intent to Distribute Controlled Substances involving ALONZO MATTHEW WHITE, such violations occurring from January 1, 2022, to April 20, 2022, in the form of:

a. books, records, receipts, notes, ledgers, airline tickets, money orders, pagers, scanners, cellular telephones and other instruments and papers relating to transportation, ordering, distribution, and sale of controlled substances.

b. contraband proceeds of drug sales including official government funds used to make controlled purchases and records of drug transactions.

c. currency, financial instruments, precious metals, jewelry, and other items of value representing proceeds of drug transactions.

d. securities, cashier's checks, money drafts, wire transfers, letters of credit, bank statements, real estate documents.

e.     names, addresses or telephone numbers in books, ledgers, electronics storage devices or on papers which reflect the nicknames, code names, addresses, and/or the telephone numbers of criminal associates.

f.     photographs or other video images depicting drug related activity or possession of firearms.

g.     paraphernalia used for the packaging, diluting, weighing and/or distribution of drugs, including, but not limited to: scales, plastic bags, diluting agents, tape, plastic wrap, and other items used to conceal drugs during transportation such as chemical and other odor-masking agents;

h.     paraphernalia used to count and package currency, including, but not limited to money counting machines, plastic wrap, bulk quantities of rubber bands, and other items used to conceal drug proceeds such as chemical and other odor-masking agents.

i.     firearms, ammunition, and firearms accessories.

j.     controlled substances, including methamphetamine, cocaine and "crack" cocaine.

k.     any indicia of ownership or occupancy of the premises or automobiles to be searched.

2